(45 Misc. Rep. 466.)

### WARREN v. PARKHURST et al.

(Supreme Court, Trial Term, Montgomery County.   December, 1904.)

INJUNCTION—POLLUTION OF STREAM.
> Plaintiff sued defendants, mill owners, to enjoin the discharge of mill refuse into a stream, the effect of which was to injure the plaintiff, though the damage committed by each defendant was nominal. *Held*, that as an action at law could not be maintained against the defendants jointly, and a remedy at law against each individual was inadequate, equity would grant relief to prevent the wrong, which otherwise could not adequately be met.

Action by John G. Warren against Edwin S. Parkhurst and others.   Demurrer to complaint overruled.

M. D. Murray and Andrew J. Nellis, for plaintiff.

Baker, Burton & Baker and William A. McDonald, for defendants.

JOHN M. KELLOGG, J.   The plaintiff brings this action against the defendants, 26 mill owners on the Cuyadutta creek, above him, alleging that each upon his own premises, for the last six years, has been discharging sewage and other foul matters into the creek; that while the damage committed by each defendant, in itself, is merely nominal, the stench arising from the creek thus polluted by all of them greatly injures the enjoyment and healthfulness of his premises; and he asks an injunction and $1,000 damages.   Various of the defendants demur upon the ground that the complaint does not state facts sufficient to constitute a cause of action, and that causes of action have been improperly united; the specific defect being multifariousness in commingling certain alleged causes of action against each defendant separately, which are not good against them jointly, and do not affect them all.

It is clear that an action at law cannot be maintained against the defendants jointly, for the reason that each is only liable for the actual wrong and damage done by him, and that, in a legal action against all, the several damages caused by each cannot be properly adjusted or determined.   Chipman v. Palmer, 77 N. Y. 51, 33 Am. Rep. 566.

While each defendant, by his separate drainage, commits a private wrong, the fact remains that the only injury to the plaintiff is caused by the noxious smells arising from the "combined" sewage

of all the defendants. The drain of each defendant is a permanent structure, having existed for years. The drains are all within a few miles of each other, and it is fair to assume that each defendant knows that the others are draining into the creek, and knows the general condition of the stream before and after it receives its drainage, and appreciates the noxious odor emitted from the creek thus fouled. Each defendant therefore knows that his continuous drainage, and the continuous drainage of each of the other defendants, at the same time and in the same manner, causes a "combined" stench which destroys the usefulness of the plaintiff's property. Still each persists in contributing his part to the general stench. We may therefore fairly assume that each of the defendants is acting under his supposed right as a riparian proprietor to discharge from his mill into the stream. This is the more natural view, than to consider him as an intentional wrongdoer. Not every discharge by a riparian owner into the stream is unlawful. Nature put the stream through his premises for his use, but he must make a reasonable and proper use of it, and must not materially divert or pollute it. "Surrounding circumstances, such as the size and velocity of the stream, the usage of the country, the extent of the injury, convenience in doing business and the indispensable public necessity of cities and villages for drainage, are also taken into consideration, so that a use which under certain circumstances is held reasonable under different circumstances would be held unreasonable. It is also material, sometimes, to ascertain which party first erected his works and began to appropriate the water." Strobel v. Kerr Salt Co., 164 N. Y. 303, 320, 58 N. E. 142, 51 L. R. A. 687, 79 Am. St. Rep. 643.

The action, therefore, is substantially based upon the use of the stream by each defendant, which, in connection with a similar use by all the other defendants, is unreasonable and unlawful, and damnifies the plaintiff. We may well see that, if but one of the defendants was discharging into the stream, the use might not be unreasonable as to the plaintiff. At least injuring no one, no liability would arise, as the law does not care for small things. It is at least evident that such a use by a single party would not cause any material change to the plaintiff by way of noxious smell, which is his only complaint here. This case therefore comes well within Meyer v. Phillips, 97 N. Y. 485, 49 Am. Rep. 538, where the defendants each carried on a separate business in running his logs down the stream, and were enjoined in a single action; the court holding they were properly united. "They claimed a common right hostile to the plaintiff. They asserted a public right common to many. In such a case all the parties asserting the common right may be united as defendants in an action by one who seeks to overthrow the common claim and establish his right against all claimants." The plaintiff here has no adequate remedy by pursuing each defendant individually. An action at law against each defendant to recover the nominal damages for each day's injury would be ruinous. An equitable action against each, in which it is conceded that the damage inflicted by him is merely nominal, is at least uncertain, for it rests to a great

extent in the discretion of the court whether it will grant him relief. Warren v. City of Gloversville, 81 App. Div. 291, 80 N. Y. Supp. 912. And in an equitable action against each, the plaintiff must go into the question of the unreasonable use by all of the defendants, for it is possible that the act of one defendant would not so contaminate the stream that the plaintiff could complain of him. If the defendants had by agreement or concerted action united in fouling this stream, there could be no doubt as to the right to enjoin them in one action. A court of equity has the power to grant adequate relief in any case which may arise, and the fact that an exact precedent is not found does not deny the right in a particular case, for it is the peculiar province of such a court to grant relief in unusual and extraordinary situations, and to invent, if necessary, a remedy to prevent a wrong which otherwise cannot be adequately met. And here, while each defendant acts separately, he is acting at the same time in the same manner as the other defendants, knowing that the contributions by himself and the others acting in the same way will result necessarily in the destruction of the plaintiff's property. If necessary, in order to get at them, a court of equity may infer a unity of action, design, and understanding, and that each defendant is deliberately acting with the others in causing the destruction of the plaintiff's property. In Strobel v. Kerr Salt Co., supra, the situation was reversed, and the lower riparian owners joined in an equitable action to restrain the riparian owner above from diverting and contaminating the stream; the court saying at page 323 of 164 N. Y., page 148 of 58 N. E. (51 L. R. A. 687, 79 Am. St. Rep. 643) :

"The objection that the plaintiffs have no cause of action common to all, and hence that they cannot sue jointly, is unsound. While each owns a distinct piece of land, situated upon a part of the stream separate from that abutted upon by the land of every other owner, they all have a common grievance against the defendant for an injury of the same kind, inflicted at the same time and by the same acts. The common injury, although differing in degree as to each owner, makes a common interest, and warrants a common remedy."

In New York & N. H. R. Co. v. Schuyler, 17 N. Y. 592, where fraudulent certificates of stock had been issued at different times to different persons and in different amounts, an equitable action against all was maintained; the court saying at page 606:

"In this state the joinder in one suit of causes of action in some sense distinct from each other, with all the necessary parties for their determination, has always been allowed with great liberality where the convenience and the ends of justice have required it."

In this case the subject of the action is the injury to plaintiff's premises caused by the stench from the stream. Each defendant is connected with that subject of action, and all together are causing the stench, and the claim of the plaintiff affects all the parties to the action. The plaintiff's case, therefore, is well within section 484 of the Code of Civil Procedure; giving to that section a liberal, fair interpretation. In Chipman v. Palmer, supra, the court, while discussing the question whether upper riparian owners could be sued in a joint

action for damages to a lower riparian owner, says that an equitable action will lie to restrain parties who severally contribute to a nuisance.

In Mahler v. Schmidt, 43 Hun, 512, the court says at page 514:

"This provision of the Code is but declaratory of the rule that previously existed, and the test is whether or not the parties joined in the suit have one connected interest centering in the point in issue in the cause, or one common point of litigation. If so, unconnected parties may be joined, even where different relief is sought against them; but if the action is against different persons, concerning things of distinct natures, in which some of the parties have no interest, then the action cannot be joined."

The only injury to the plaintiff arises from the foulness of the stream at his place. No one defendant caused that injury. All of the defendants did cause it. There are but two questions before the court: (1) Are the several riparian owners, considering the location and the uses of the stream, making an improper use of it by draining into it? (2) Does that improper use result in a situation, combined from the acts of all of them, which causes the injury to the plaintiff? No right of any defendant can suffer by the maintenance of this joint action. The whole controversy can be settled with less expense to each in this manner than in any other way. All of the defendants may be enjoined, and, if the question of damages is urged, a reference may be had to determine what damage has been caused by each defendant. This power of a court of equity to grant exact justice and proper relief for or against each defendant relieves such an action of any possible hardship.

The demurrers are therefore overruled, with liberty to withdraw the same within 20 days upon payment of $35 costs.

Demurrers overruled, with leave to withdraw same within 20 days upon payment of $35 costs.